IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CALEB A. GREEN,

      **Plaintiff,**

v.                                                   Civil Action 2:24-cv-4103
                                                       Judge Algenon L. Marbley
                                                       Magistrate Judge Kimberly A. Jolson

COMMUTEAIR, et al.,

      **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Caleb Green, an Ohio resident proceeding *pro se*, brings this action against his former employer and its owners. This matter is before the Undersigned for an initial screen of Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2). For the following reasons, the Undersigned **RECOMMENDS** that his Amended Complaint (Doc. 7) be **DISMISSED**.

**I.     BACKGROUND**

Plaintiff filed this action on October 25, 2024, alleging that he was discriminated against based on his race by his former employer, CommuteAir. (Doc. 1-1). The Court granted his motion to proceed *in forma pauperis* and construed his complaint as bringing a claim for employment discrimination under Title VII. (Doc. 4). Initially, the Undersigned recommended dismissing the complaint for pleading and statute of limitations issues. (*See id.*). But after Plaintiff provided more information, (Doc. 5), the Undersigned withdrew that recommendation and granted Plaintiff leave to amend his complaint. (Doc. 6 at 3–5). At the same time, the Undersigned outlined his complaint's deficiencies and the pleading requirements for an employment discrimination claim. (*See id.*). Further, the Undersigned instructed Plaintiff to provide a Right to Sue Notice from the Equal Employment Opportunity Commission (EEOC), if he received one. (*Id.* at 5).

Approximately two weeks later, Plaintiff filed his Amended Complaint. (Doc. 7). While Plaintiff added Champlain Enterprises, Inc., and United Airlines, Inc., as Defendants, he did not change the narrative portion of his complaint at all. (*See* Doc. 7 at 1 (adding Defendants who are allegedly "owners" of CommuteAir), 3–4 (stating the same as his initial complaint)). Instead, Plaintiff attached numerous exhibits to his original complaint and wrote some notations in the margins of those documents. (*See* Doc. 7-1; Doc. 7-2). With those exhibits, Plaintiff did not include a Right to Sue Notice from the EEOC. (*Id.*).

The Court now screens Plaintiff's Amended Complaint as required under 28 U.S.C. § 1915(e).

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Complaints by *pro se* litigants are to be construed liberally and held to less stringent standards than those prepared by attorneys. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). But this leniency is not boundless, and "it is not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012). Nor is it the Court's role to "ferret out the strongest cause of action on behalf of *pro se* litigants" or advise "litigants as to what legal theories they should pursue." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (considering the *sua sponte* dismissal of an amended complaint under 28 U.S.C. § 1915(e)(2)). At bottom, "basic pleading essentials" are still required, regardless of whether an individual proceeds *pro se*. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

These essentials are not onerous or overly burdensome. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), and provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). In reviewing Plaintiff's Amended Complaint at this stage, the Court must construe it in his favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this standard does not require "detailed factual allegations, . . . [a] pleading that offers labels and conclusions" is insufficient. *Iqbal*, 556 U.S. at 662 (internal quotation and quotation marks removed). In the end, the Court must dismiss the Amended Complaint "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation and quotation marks omitted).

## III.  DISCUSSION

In its previous Order, the Undersigned outlined several pleading deficiencies with Plaintiff's original complaint. (*See* Doc. 6 at 3–5 (noting that Plaintiff did not identify his protected class, provide specifics on Defendant CommuteAir's conduct, or connect that conduct to his protected characteristics)). Instead of remedying those deficiencies, Plaintiff's Amended Complaint is exactly the same as his first. (*Compare* Doc. 7 at 3, *with* Doc. 1-1 at 3). All that has changed is that Plaintiff added two companies as Defendants, claiming they are Defendant CommuteAir's "owners." (Doc. 7 at 1).

3

Additionally, Plaintiff attaches numerous exhibits to his original pleading. (*See* Docs. 7-1, 7-2). But Plaintiff provides little explanation of what these exhibits are or how they support his allegations. (*See* Doc. 7 at 3 (failing to mention the exhibits at all); Doc. 7-1 at 4 (handwritten note on an email that Plaintiff received a "write-up"), 8 (handwritten statement that Plaintiff did not receive certain shifts he wanted), 10 (discussing a person named "Joslyn" who did not receive a "write up"), 12 (another note about "Joslyn" on a screenshot of a schedule)). Twice now, the Court has provided "a roadmap laying out the elements" for pleading employment discrimination claims. *Link v. Bd. of Educ. of Kettering City Sch.*, No. 3:22-cv-295, 2024 WL 3624325, at *2 (S.D. Ohio Aug. 1, 2024); (Doc. 4 at 3; Doc. 6 at 3–5). Instead of alleging facts showing he is entitled to relief, Plaintiff seemingly provides a muddle of documents and seeks for the Court to "conjure up claims" on his behalf. *Frengler*, 482 F. App'x at 977. As discussed, the Court cannot do so. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("Judges are not like pigs, hunting for truffles that might be buried in the record." (internal quotation and quotation marks omitted)).

The Undersigned instead looks to Plaintiff's brief statement of his claim, where he again alleges that he was "forced to resign" due to false accusations by his manager, that he was treated differently than his coworkers regarding discipline, and that he did not receive certain shifts he preferred. (Doc. 7 at 3). Where Plaintiff's exhibits attached to his Amended Complaint ascertainably address these issues, the Court will consider them and construe them liberally in his favor. *Id.* at 712. But put plainly, the Court will not create allegations or claims on his behalf. *Martin,* 391 F.3d at 714.

4

A. **Employment Discrimination**

The entirety of Plaintiff's Amended Complaint is as follows:

> I was forced to resign for Commuteair because of discrimination. I was forced to resign on 7/19/2023 by HR/Jeremy Gorges because of false accusations brought to him by my manager (Magen Edwards). I experienced multiple incidents of discrimination by watching my co-workers become rewarded with acts that I was told I cannot. Then, I was held to a different standard of discipline which my co-workers brought to my attention when I received discipline on a shift with multiple people having the same access and similar shift responsibilities that overlap when it comes to operational needs. I was let go and advised by Mr. Jeremy Gorges that he was not racist and neither was the company. I asked for an investigation to be conducted, and he emailed me 8/4/2023, "The concerns I was able to substantiate, such as shifts being removed from the bid, are not a violation of company policy." The shift I let Magen Edwards know I wanted was changed after my first bid. And, the next bid for operations that I was rewarded was removed and I was given a shift that did not correlate with operational needs.

(Doc. 7 at 3).

In this, Plaintiff identifies no discernible legal claims, but the Court again construes these allegations as bringing an employment discrimination claim under Title VII of the Civil Rights Act of 1964. Title VII provides that it is unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To support a Title VII claim, individuals may provide either direct or circumstantial evidence of discrimination. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)*, abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Here, because Plaintiff does not allege any direct evidence of discrimination, the Court considers his allegations using the *McDonnell Douglas* framework as a guide. (*See* Docs. 7, 7-1 (discussing only how he was treated differently than other coworkers)); *Younnis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). To establish such a claim of discrimination, Plaintiff must demonstrate "(1) that he is a member of a protected class; (2) that he suffered an adverse

5

employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he." *Younnis*, 610 F.3d at 363. Notably, Plaintiff does not need to plead every element at this stage. *Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012). But he must allege enough facts for the Court to reasonably infer that Defendant discriminated against him because of a protected characteristic. *Id.*

Like in his first filing, Plaintiff fails to identify his protected class. (Doc. 7). And he does not identify the basis of Defendants' alleged discrimination other than implying that Defendant CommuteAir was "racist." (*See id.* at 3). In the EEOC charge and pre-charge inquiry attached to his Amended Complaint, Plaintiff marks that he was discriminated against based on his race, color, religion, and sex. (Doc. 7-1 at 15, 18). But he does not list his protected characteristics in those documents either. (*See* Doc. 7 at 3; Doc. 7-1 at 14–20, 22 (noting that he is religious, but not identifying a religion)). Yet at the end of his filing, he attaches an unsigned letter purportedly written by his former coworker, who refers to Plaintiff as a Black man. (Doc. 7-2 at 1). To be sure, this means Plaintiff belongs to a protected class on that basis. *Tribble v. Memphis City Sch.*, 193 F. App'x 401, 405 (6th Cir. 2006).

Even so, Plaintiff fails to allege facts that would allow the Court to "draw the reasonable inference" that Defendants discriminated against him because of those characteristics. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678)). While Plaintiff says that he was "forced to resign" from his position, other materials he provides make clear that he was terminated. (Doc. 7 at 3; Doc. 7-1 at 3, 12). And beyond stating that Defendant CommuteAir is "racist," Plaintiff does not connect his termination to his race or gender. (Doc. 7 at 3). Instead, Plaintiff says his termination resulted from "false accusations" made against him. (Doc. 7 at 3; Doc. 7-1 at 2–3, 15). While Plaintiff appears to believe these accusations were the result of racism, he provides no allegations

6

to support this conclusory statement. *See Ramsey v. Frisch's*, No. 1:16-cv-1129, 2016 WL 7637287, at *2 (S.D. Ohio Dec. 9, 2016) (finding a plaintiff failed to state a claim for race discrimination under Title VII where he said he was fired due to his race but also due to issues with vacation time), *report and recommendation adopted*, No. 1:16-cv-1129, 2017 WL 25553 (S.D. Ohio Jan. 3, 2017) ; *Greene v. Ohio State Univ.*, No. 2:14-cv-1809, 2014 WL 6389573, at *5 (S.D. Ohio Nov. 14, 2014) (dismissing a compliant where the plaintiff alleged he was fired "for alleged misuse of sick time" and concluded his termination actually resulted from racism without additional evidence).

The same is true for Plaintiff's statements concerning discipline and scheduling. Throughout his Amended Complaint, Plaintiff says he was disciplined and subjected to certain accusations while others were not. (Doc. 7 at 3; Doc. 7-1 at 10, 13, 15, 19). But he does not identify the race or gender of any of these coworkers or say how they were otherwise similarly situated to him. (Doc. 7 at 3; Doc. 7-1 at 19; *but see id.* at 4, 11–12 (providing screenshots of emails and schedules with supposed photos of his coworkers)). Nor does he provide any facts showing how this allegedly differing treatment resulted from discrimination. (*See* Doc. 7-1 at 18–19 (writing that other coworkers were "rewarded by doing whatever they wanted" but not connecting that to his allegations of discrimination), 22 (discussing that Plaintiff did not receive a shift change he requested but failing to provide other facts showing how that constituted discrimination); Doc. 7-2 at 1 (stating without support that Plaintiff's differing treatment resulted from race or gender discrimination)); *St. John v. Bd. of Trs. of Lakewood Library*, No. 1:17-cv-735, 2017 WL 4444133, at *2 (N.D. Ohio Oct. 4, 2017) ("Conclusory allegations of discrimination are insufficient to state a plausible claim[.]") (dismissing a complaint where a plaintiff said discipline he received at a library was "racist" without alleging other facts in support). Indeed, at some points in his Amended Complaint, Plaintiff provides contradictory information suggesting

7

that this treatment was the result of training deficiencies, operational and scheduling needs, and Plaintiff's own job performance. (*See* Doc. 7-1 at 6 (discussing shifts are awarded first by seniority, then by operational needs), 15 (noting that Plaintiff received "write ups" for "shift problems" and for sleeping during shifts), 19 (stating that management told him he did not get his preferred shifts because "[he] didn't know how and then for operations, lastly, because they can do it")).

Further, it is not clear that Plaintiff's shift and discipline issues meet the standard for adverse employment actions in Title VII discrimination claims. For these types of claims, an adverse employment action is one that results in "a materially adverse change in the terms and conditions of a plaintiff's employment." *Reynolds v. Mich. Dep't of Corr.*, No. 12-12561, 2014 WL 172287, at *3 (E.D. Mich. Jan. 15, 2014) (internal quotation omitted). A "mere inconvenience or an alteration of job responsibilities" is not enough; materially adverse employment actions usually "inflict[] direct economic harm on the plaintiff." *Id.* at *3–4. To that end, shift reassignments or transfers "without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Id.* at *4 (quoting *Kocsis v. Multi-Care Mgmt., Inc.* 97 F.3d 876, 885 (6th Cir. 1996)); *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (noting Title VII requires plaintiffs to show that job transfers left them "worse off"). Here, Plaintiff does not point to any discipline issues that caused him to lose hours, pay, or other advantages. (*See* Doc. 7 at 3); *Handshoe v. Mercy Med. Ctr.*, 34 F. App'x 441, 448 (6th Cir. 2002) (finding a disciplinary "write-up" did not rise to the level of a materially adverse employment action without other hardships). And although certain shifts may have been preferable for Plaintiff, "[a] refusal to grant a shift change . . . is not an adverse employment action" without other negative impacts, such as a decrease of pay, title, or benefits. *Santana v. U.S. Tsubaki,*

*Inc.*, 632 F.Supp.2d 720, 721–722 (N.D. Ohio 2009) (collecting cases); (*see* Doc. 7-1 at 9 (stating only that he received shifts he did not place "higher on [his] list")).

The Court also notes that Plaintiff's EEOC documents mark "retaliation" as another source of discrimination. (Doc. 7-1 at 18). Plaintiff also checks a box that the retaliation occurred when he "helped or was a witness in someone else's complaint about job discrimination." (*Id.*). But upon review of all the attachments Plaintiff provides, the Court cannot ascertain what incident Plaintiff is referring to in this portion of his filing. (*See generally id.*). Elsewhere, Plaintiff says he was fired after he accused a manager of "displaying racism towards [him]." (Doc. 7-1 at 15). But this, too, is a wholly conclusory statement unsupported by any evidence or additional facts. *See Reynolds-Collins v. Donahoe*, No. 2:14-cv-1204, 2015 WL 5174641, at *4 (S.D. Ohio Sept. 4, 2015) (dismissing a Title VII retaliation claim where the plaintiff failed to set forward "sufficient direct or inferential allegations related to any of the material elements"); *Wells v. Steve Madden, Ltd.*, No. 3-15-0366, 2015 WL 4476597, at *3 (M.D. Tenn. July 22, 2015) (dismissing a retaliation claim as insufficiently pled where the plaintiff said her employer retaliated against her after she complained about racism but failed to allege specific circumstances). Plus, this statement is directly contradicted by other documents provided by Plaintiff in which he says he was fired due to "false accusations." (Doc. 7 at 3; Doc. 7-1 at 1–2); *Link*, 2024 WL 3624325, at *2 (noting that inconsistencies in pleadings "make it difficult to form reasonable inferences in favor of the plaintiff" (internal quotation omitted)). Given that Plaintiff offers little to no information about how he was retaliated against, the Court cannot say he has met the minimal pleading requirements for a retaliation claim under Title VII either. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which a plaintiff has not spelled out in his pleading." (internal quotation and quotation marks omitted)).

While the requirements at this stage are low, Plaintiff provides no more than conclusory statements that Defendants' actions resulted from discriminatory motivations. *See Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (noting that though *pro se* litigants' pleadings are construed liberally, they must still adhere to basic pleading standards). Without more, his employment discrimination claims cannot proceed.

**B.    Exhaustion Issues**

On a final note, the Undersigned previously directed Plaintiff to provide his Right to Sue Notice from the EEOC. (Doc. 6 at 5). Plaintiff did not do so. (*See generally* Doc. 7; Doc. 7-1 (providing copies of his EEOC charge and pre-charge inquiry only)). Importantly, a plaintiff seeking to bring an action under Title VII in federal court must first exhaust his administrative remedies. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006). "This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement, which is the preferred means of disposing of such claims." *Id.* at 732. Simply put, "without a right-to-sue letter from the EEOC . . . an individual may not file suit under Title VII." *Bombach v. Dollar Gen. Store 12202, Dist. 437, Region 18*, No. 3:12-cv-208, 2012 WL 2564844, at *2 (S.D. Ohio July 2, 2012), *report and recommendation adopted*, No. 3:12-cv-308, 2012 WL 2979011 (S.D. Ohio July 20, 2012). Accordingly, Plaintiff's failure to provide his Right to Sue Notice provides another basis for why this action should be dismissed. *See Baber v. LEC*, No. 1:18-cv-62, 2018 WL 4610681, at *3 (S.D. Ohio Feb. 2, 2018) (citing *Mitchell v. Chapman*, 343 F.3d 811, 821 n.10 (6th Cir. 2003)), *report and recommendation adopted*, No. 1:18-cv-062, 2018 WL 3454683 (S.D. Ohio July 18, 2018); *Bombach*, 2012 WL 2564844, at *2 (recommending the complaint be dismissed without prejudice for failing to provide a Right to Sue Notice).

## IV. CONCLUSION

Because Plaintiff fails to allege sufficient facts for a claim under Title VII, and because he did not provide his Right to Sue Notice as directed, the Undersigned **RECOMMENDS** that Plaintiff's Amended Complaint (Doc. 7) be **DISMISSED**.

Date: December 17, 2024
/s/Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).